
FILED
2008 Aug-15  PM 02:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JANET S. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 07-G-1393-E |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

The plaintiff, Janet S. Johnson, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)      whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

        In the instant case,  ALJ Jack F. Ostrander determined the plaintiff met the first two tests, but concluded that while the plaintiff's osteoarthritis, chronic obstructive pulmonary disease, degenerative disk disease and depression are "severe" impairments, they did not meet or medically equal a listed impairment.  [R. 29].  The ALJ found the plaintiff unable to perform her past relevant work, but found that the plaintiff retains the residual functional capacity to perform a limited range of sedentary work.  Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

        When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even
> though none of the impairments, considered individually, is disabling.  In
> such instances, it is the duty of the administrative law judge to make

specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

## DISCUSSION

The plaintiff claims disability under Listing 12.05C, which requires that the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993)(quoting Listing 12.05C). When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination. Davis 985 F.2d at 533. The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in Edwards by Edwards v. Heckler:

An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant" requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir. 1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C). The second part of the Listing,

4

therefore, imposes a less stringent requirement than that imposed by 20 C.F.R.

§ 404.1520(c).  Section 404.1520 sets forth the five-step sequential process by which a

claimant's disability is evaluated.  Section 404.1520(c) defines "severe impairment" to

require that the impairment or combination of impairments significantly limit the

claimant's physical or mental ability to do basic work activities.

   In addition to a valid I.Q. score meeting the requirements of Listing 12.05C,

a plaintiff must also satisfy the diagnostic description in the introductory paragraph of

Listing 12.05C.  Listing 12.00A ("If your impairment satisfies the diagnostic description

in the introductory paragraph and any one of the four sets of criteria, we will find that

your impairment meets the listing.")  The introductory paragraph to Listing 12.05C is as

follows:

> Mental retardation: Mental retardation refers to significantly subaverage
> general intellectual functioning with deficits in adaptive functioning
> initially manifested during the developmental period; i.e., the evidence
> demonstrates or supports onset of the impairment before age 22.  The
> required level of severity for this disorder is met when the requirements in
> A, B, C, or D are satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual

functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet

Listing 12.05C.  In this circuit, it is presumed that a persons I.Q. remains fairly constant

throughout his life and a valid I.Q. test meeting the Listing criteria creates a rebuttable

presumption that the condition manifested itself before age twenty-two.  Hodges v.

Barnhart, 276 F.3d 1265, 1268-69  (11th Cir. 2001).  The Hodges court recognized that

although this circuit had not formally recognized this presumption, it had been implicitly recognized in Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, he is presumptively disabled under the Listing if the other requirements of the Listing have been met. Hodges, 276 F.3d at 1269.

As found by the ALJ, the plaintiff has the following "severe" impairments: osteoarthritis; chronic obstructive pulmonary disease; degenerative disk disease; and depression.  [R. 29].  On November 7, 2005, Robert A. Storjohann, Ph.D., the Commissioner's consulting psychologist, conducted a Wechsler Adult Intelligence Scale Third Edition (WAIS-III), which rendered the following results:

| Verbal | Performance | Full Scale |
|--------|-------------|------------|
| 70 | 67 | 66 |

[R. 429].  Dr. Storjohann concluded:

> The current test results place her level of intellectual functioning in the mild range of mental retardation.  The testing indicates that her overall memory functioning is within normal limits.  She is in need of mental health treatment.

[R. 431].  "During the testing portion of this evaluation," Dr. Storjohann stated, "Mrs. Johnson put forth good effort[1].  Therefore, the test results appear to represent an accurate appraisal of her current abilities."  [R. 428].

---

[1] Dr. Storhohann reported, "Mrs. Johnson was cooperative with the evaluation process.  She appeared to make her best effort to answer all questions accurately and to the best of her ability."  [R. 431].

Dr. Storjohann's consultative mental examination also assessed the plaintiff as having a Global Assessment of Functioning of 42. [R. 430]. The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV"). A GAF of 41-50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32. Several courts of appeal have, in unpublished or non-precedential opinions, considered the impact of a claimant's GAF score of 50 or below. The courts generally find that a GAF score of 50 or below is not in and off itself determinative of disability. See Hillman v.Barnhart, 48 Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir. 1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); Seymore v. Apfel, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work.); Stalvey v. Apfel, 242 F.3d 390

(Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work.").  But cf. Lloyd v. Barnhart, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

Dr. Storjohann also found:

The prognosis for significant improvement during the coming 6 to 12 months is considered to be extremely poor given her chronic and severe health problems and the chronicity and severity of her psychiatric difficulties.

Based on the results of this evaluation, Mrs. Johnson appears to have moderate deficits in her ability to understand, carry out, and remember instructions in a work setting.  She appears to have marked deficits in her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting.

[R. 431].

The ALJ "completely rejected" the opinion of his own consulting psychologist, Dr. Storjohann, "as being out of sync with the weight of the evidence. . . ." [R. 26].  However, Dr. Storjohann's report is the only medical opinion contained in the record regarding the plaintiff's mental impairments which involved psychometric testing. The ALJ admits that the plaintiff achieved a full scale IQ score of 66, but minimizes this valid score placing the plaintiff in the mild range of mental retardation by saying that the plaintiff "has a 7[th] grade education in regular classes and, as she told the doctor, had never repeated a grade."  [R. 25].  It is true that the plaintiff attended seventh and eighth grade,

but she had failing grades in all core courses.  [R. 158].  Further, the plaintiff testified that while she can read and write, she "just couldn't learn" and dropped out of school after the eighth grade.  [R. 495].  Nothing from the plaintiff's school records is inconsistent with Dr. Storjohann's testing.

The ALJ also suggests that the plaintiff's "history of successful semi-skilled employment and independent functioning indicates that these scores are an underestimate of her actual intellectual and mental ability."  [R. 25].  Julia R. Russell, the Vocational Expert, testified to the plaintiff's past work:

> She's worked as a short-order cook, performed at the medium level of exertion outlined by the DOT at light, semi-skilled in nature.  The reason for the, the difference in the exertional level would be that she was responsible for stocking supplies, and that is not uncommon for cooks to do that.  Waitress, light, semi-skilled.  Fast food worker, light, unskilled.  No transferable skills.

[R. 500].  While two of the plaintiff's past jobs are described as "semi-skilled," this work is not inconsistent with the plaintiff's I.Q. scores because the work performed utilized physical skills rather than intellectual skills.

The present case bears a resemblance to the situation in Wilder v. Chater, 64 F.3d 355 (7th Cir. 1995).  In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner.  The Wilder court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition.  . . . The

> psychiatrist's testimony, though conclusional (but then no one pressed him
> to elaborate the grounds for his conclusions), was the only direct testimony
> concerning the critical issue of the date of onset of Wilder's disabling
> depression.  Severe depression is not the blues.  It is a mental illness;  and
> health professionals, in particular psychiatrists, not lawyers or judges, are
> the experts on it.  The question what stage a physical or mental illness had
> probably reached some years before it was first diagnosed is a medical
> question, and the uncontradicted evidence of the only disinterested expert to
> opine upon it is entitled to considerable weight.  We do not say conclusive
> weight;  but the facts on which the administrative law judge relied to
> contradict that evidence are singly and together unimpressive.

Id. at 337 (emphasis added)(citations omitted).

An ALJ may not arbitrarily reject uncontroverted medical evidence.

Walden v. Schweiker, 674 F.2d 835, 839 (11th Cir. 1982).  In rejecting Dr. Storjohann's

opinion, the ALJ "succumbed to the [forbidden] temptation to play doctor and make [his]

own independent medical findings."  Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

As such, the ALJ's failure to consider the plaintiff's mild mental retardation as a severe

impairment is not supported by substantial evidence.  Because the plaintiff meets the

Listing of 12.05C, she is disabled within the meaning of the Act.  Once a claimant is

found to suffer from a Listed impairment, vocational factors are irrelevant.  Ambers v.

Heckler, 736 F.2d 1467 (11th Cir. 1984)(fact that claimant could return to her past work

held irrelevant once she met one of the Listings).

## CONCLUSION

In order to find the plaintiff not disabled in the present case, the ALJ

rejected the opinion of the only psychological examiner who tested the plaintiff.  His

rejection of his own consultative examiner's findings is not supported by substantial

evidence.  Therefore, based upon the uncontradicted opinion of Dr. Storjohann, the plaintiff is disabled within the meaning of the Social Security Act.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 15 August 2008.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.